## Charles T. Gorham v. William H. Arnold.

*Equitable estate: Levy.* An equitable estate is not subject to levy and sale under an execution. See *Gorham v. Wing, 10 Mich., 492.* This is not inconsistent with the principle which allows the sale of what is called an equity of redemption in mortgaged premises under an execution against the mortgagor; for under our laws the estate of the mortgagor is treated as a legal title.

*Estoppel:* A transaction in which there was no concealment nor misunderstanding of facts, will not furnish grounds for an estoppel *in pais.*

*Heard January 7. Decided January 10.*

Error to Washtenaw Circuit.

This was an action of ejectment brought by Charles T. Gorham in the Circuit Court for the County of Washtenaw against William H. Arnold, to recover the possession of two hundred acres of land in Washtenaw county. The following facts were found by the court: That on the eleventh day of June A. D. 1842, the title in fee to the lands in controversy was in Thomas Lee, who was also then in possession, and that said Lee is the common source from and through whom the parties respectively derive the titles claimed by them to the land. That on said eleventh day of June, Lee by a warranty deed, conveyed to Nelson H. Wing and William McCauley the land described. Such deed was absolute and unconditional upon its face, and purported to be for the consideration of three thousand dollars, though no pecuniary consideration was in fact paid therefor. Simultaneously with the execution and delivery of such deed, Wing and McCauley executed under their respective hands and seals, and delivered to Lee, a defeasance in writing in the words following:—"Whereas, Thomas Lee has this day deeded to Nelson H. Wing and William McCauley the following described land, viz: The S. W. quarter of the N. E. quarter and the W. half of S. E. quarter and the E. half of the S. W. quarter of section thirty-five, town one south,

of range four east, being the farm in Dexter, Washtenaw
county, known as the Thomas Lee farm, containing two
hundred acres of land, more or less: If Thomas Lee bears
Nelson H. Wing and William McCauley harmless for cer-
tain bond or bonds said Wing and McCauley have signed
as surety for said Lee to the United States, as Receiver of
Public Moneys of the land office at Green Bay, then said Wing
and McCauley agree to re-deed to said Lee the above described
land. It is understood that if the United States can hold
legally said Wing or McCauley as said Lee's surety, that said
Wing and McCauley have the right to turn this property
out to satisfy the demand at any time they see fit, and said
Wing and McCauley are to have the above land until they
are discharged by the United States from any liabilities in
consequence of having signed as surety for said Lee, it is
thought said Wing and McCauley are now clear, but said
Wing and McCauley take the deed of said land to bear
them harmless lest they might have to bear the expense,
one or both of them, of a law-suit with the United States."
The deed from Lee to Wing and McCauley was duly
recorded; but the defeasance was not. The court further
found that several judgments were recovered in favor of
the United States against Lee, and against Wing and
McCauley, as sureties of Lee; that an execution on the
judgment against Lee was issued, and by direction of
Wing and McCauley levied on the land in controversy;
which at the marshal's sale was bid off by one Stillman, to
whom the marshal's deed was executed and delivered. Still-
man conveyed the land to the plaintiff. Subsequently to
the levy and sale of the land under the execution, but prior
to the execution of the marshal's deed, Wing and McCauley
quit-claimed the land to Ebenezer Arnold, to whom, Lee,
being still in possession, attorned, and under whom the
defendant claims.

The court found as conclusions of law :

First. The instrument executed by Wing and McCauley to Thomas Lee simultaneously with the deed of conveyance by Lee to them, and the said deed of conveyance, are to be construed as one instrument, whereby the legal title to said land in fee was conveyed to said Wing and McCauley, their heirs and assigns, in trust for the purposes mentioned therein, and with power to turn the same out,—that is, to sell and convey the same in fee for the purposes therein expressed.

Second. That the legal title to said land being in Wing and McCauley at the time of the levy and sale, by virtue of the execution against Thomas Lee, it was not liable, to such levy, and no title passed by virtue of such sale and the marshal's deed thereon, to the United States, notwithstanding the assent thereto of Wing and McCauley. The legal title being in them, the land could be turned out, that is sold, or conveyed, or mortgaged by them, under the statute of frauds, only by deed or conveyance in writing, subscribed by them or by some person thereunto by them lawfully authorized by writing. The equitable interest of Lee was not subject to such levy and sale.

Third. The defendant, although chargeable with notice, is not estopped, by the acquiescence of Wing and McCauley in the levy and sale, from denying the title of the plaintiff, as derived from the United States, or the title of the United States, by virtue of such levy and sale and marshal's deed. As there was no misrepresentation of facts or suppression of the truth by Wing and McCauley, and no claim but that the bidder at the sale in behalf of the United States acted with full knowledge of the facts concerning the title, the doctrine of equitable estoppel cannot be applied.

Fourth. The plaintiff having failed to establish a legal

title to, or right to possession of said lands in himself, final judgment must be rendered in favor of the defendant and against the plaintiff for costs of suit to be taxed.

The judgment entered upon the finding comes into this court by writ of error.

*Alfred Russell*, for plaintiff in error.

*Geo. V. N. Lothrop*, for defendant in error.

CAMPBELL, CH. J.

The questions in this case all resolve themselves into the single inquiry whether the title involved was one subject to levy and sale on execution.

The question of estoppel cannot have any significance, because there was no concealment or misunderstanding of facts in any way due to the parties alleged to have been estopped. The mistake made, if any, was one of law; and upon that no estoppel could arise unless under very peculiar circumstances, if at all.

When the same substantial facts were before us in *Gorham v. Wing, 10 Mich. R., 492*, it was very plainly intimated, though not decided, that the rights levied upon were purely equitable, and therefore not subject to levy under the laws existing at the time. An equity of redemption under an ordinary mortgage is always subject to execution here, but that has never been considered by our courts as an equitable estate. We have used an antiquated phrase to describe an interest which has always been treated as a legal estate by our tribunals, and which has now been divested of all the former difficulties which may have made it anomalous. But no equitable estate—properly so called—was liable to be sold on the execution in controversy.

We have no doubt the transaction described in the record

GORHAM *v.* ARNOLD.

created nothing but a trust in favor of the execution debtor, which could only be seized through equitable means. The legal title was conveyed to Wing and McCauley, and they gave back a written agreement to re-deed on certain contingencies, in case they were held harmless against certain liabilities as sureties. But their agreement reserved the right, in case they were found to be liable, to turn out the property to the United States at any time they might see fit, or to hold the land until discharged by the United States. This subserved the purposes of a mortgage, but it did more. It contemplated that they might convey the property if they found it necessary or desirable to do so. If the agreement merely designed that they might turn it out on execution, there would be no sense in it, because if liable to execution, it would not be necessary for them to reserve any such right, while if not liable, the provision would be nugatory, because individuals cannot change the law of the land. This clause was evidently designed to enable them to make such arrangements amicably with the United States as to save unnecessary expense, in case they were found liable, and it can have no other meaning. They held the legal title for trust purposes, and were not mortgagees in any sense beyond that which for certain purposes treats all securities in equity as in the nature of mortgages. But no mortgagee, in the strict sense of the term, could transfer title to any part of the mortgaged premises, free and clear of the right to redeem. As between the parties, no doubt the rights might be settled in equity on principles analogous to those applied in mortgage cases, but the analogy does not make the transactions identical.

We do not deem it necessary, in view of our previous decisions, to enlarge upon any of the questions involved. The judgment was correct and must be affirmed.

The other Justices concurred.