(Decided 6th January, 1888.)

WILLIAM R. LINCOLN *vs.* JOHN T. QUYNN, JOHN D. ADDISON, DAVID C. WINEBRENNER, and others.

*Coditional sale of Goods—Bona fide Purchaser without notice of the Conditions—Constructive notice—Title of Mortgagee without Notice as against Vendor—Practice in Equity—Forefeiture not Enforceable in Equity.*

A *bona fide* purchaser of goods and chattels, without notice of the condition upon which his vendor has acquired the possession, will be protected against the claim of the original vendor, in the same manner where the sale and delivery are conditional, as where the possession has been acquired by fraud.

Certain goods were sold by L. to H. The contract of sale contained an express stipulation that the title to the goods should not vest in H. until the price should be paid in full, by monthly instalments. The sale was made in Baltimore, and the goods were carried by H. to Frederick and there used in a hotel kept by him. Some time afterwards H. mortgaged the goods to Q., A., and W., to secure the payment of two notes of even date with the mortgage, and payable by H. to a bank. On one of these notes all of the mortgagees were securities and on the other W. alone was security. A few days afterwards a second mortgage was made by H. to R. and others to secure a note payable by him to them. The mortgaged property was afterwards placed in the hands of receivers by an order of the Circuit Court for Frederick County passed in an equity proceeding instituted by the second mortgagees against H. and the first mortgagees. A petition was filed in that case by L. asserting title to the goods on the ground that he had not been paid the whole purchase money, and praying their delivery to him by the receivers, or if the

Court should think he was only entitled to the balance of the purchase money then unpaid, that said receivers be directed to pay him that amount, or if they had no funds applicable to such payment, that the goods be sold and said balance paid out of the proceeds of sale. On appeal from an order dismissing said petition it was HELD:

1st. That W., who had information which fairly put him upon inquiry, as to the nature of the title of H. was chargeable with notice of every fact which that inquiry would have ascertained; and therefore his title as mortgagee was not good.

2nd. That as it was shown that the other mortgagees had no notice of the conditional sale by L. or of any claim on his part to the goods, their title must be sustained.

3rd. That as the prayer of the petition was for certain specific relief, asserting a claim to the whole property, or alternatively, to the amount of the purchase money remaining unpaid, and was directed against all of the mortgagees, it could not be granted in that form, and there being no prayer for general relief, the petition was properly dismissed.

4th. That L. might still file a petition against W. and he would be entitled to receive such portion of the proceeds of the sale of the goods, (not exceeding the balance of the purchase money due him by H.) as might be applicable to the payment of the note on which W. alone was surety.

5th. That the co-sureties with W. should not be deprived of their rights under the mortgage. They were in no sense partners with him, and ought not to be affected by notice which was entirely personal to him.

Where it is stipulated in a contract of sale that on default by the vendee in any of the credit payments, the vendor shall have the right to take possession of the goods, and that all previous payments shall be forfeited, a Court of Equity will not lend its aid to enforce the forfeiture.

APPEAL from the Circuit Court for Frederick County, in Equity.

This appeal is taken from an order dismissing a petition filed by the appellant in certain equity proceedings, in which some of the appellees were plaintiffs and the others were defendants. The case is stated in the opinion of the Court.

Lincoln *vs.* Quynn, *al al.*

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*David S. Briscoe,* for the appellant.

The transaction between Lincoln and Hoover as set out in their contract of the 22nd of March, 1886, was a conditional sale. As by said contract the title of the property delivered to Hoover was expressly and absolutely retained by Lincoln until the full performance of the condition expressed therein, the delivery thereof passed no title to Hoover; no title to said property could be acquired by Hoover until the conditions precedent to the vesting of said title were fully performed, and at the time of the execution and delivery of the mortgages to Winebrenner and others, and to Ritter and others, no title had vested in him, because said conditions precedent had not been fully performed. Conditional sales of both real and personal property are recognized and sustained by this Court. *Corse vs. Patterson,* 6 *H. & J.,* 153; *Hinkley, Ex'r vs. Wheelwright,* 29 *Md.,* 341; *Butler vs. Gannon and Duvall,* 53 *Md.,* 333, 340, 341.

The principle of the law of conditional sales is "that whenever there is a condition precedent attached to a contract of sale, which is not waived by an absolute and unconditional delivery, no title passes to the vendee until he performs the condition or the seller waives it." The contract of the 22nd of March, 1886, was for the conditional, (*not unconditional*) sale and delivery of furniture by Lincoln to Hoover. By that contract Lincoln did not part with his interest in the furniture delivered to Hoover; on the contrary by its express terms the title thereof was retained, and was to remain in him "until the entire price is fully paid." The language of the condition is unequivocal and positive. Payment of the whole stipulated price of the said furniture is a condition precedent to the vesting of the title to said furniture in the said party of the second part;

and upon payment in full, and not before, the said title shall vest. *Herring vs. Hoppock*, 15 *N. Y.*, 409, 411; *Coghill vs. Hartford & New Haven R'. R. Co.*, 3 *Gray*, 545; *Corse vs. Patterson*, 6 *H. & Johnson*, 153, 155; *Harkness vs. Russell*, 118 *U. S.*, 663.

And this principle of conditional sales contended for in support of the appellant's claim, is not invalidated or affected in any way by the decision in the case of *Hall vs. Hinks*, 21 *Md.*, 406, relied upon by the appellees, inasmuch as the meaning and scope of the decision in that case, seems to be the declaration and application of the recognized legal principles governing the business intercourse of merchants dealing with each other, according to the usage and custom of trade, and extends no further.

Nor has the law of the decisions in the cases of *Levi vs. Booth*, 58 *Md.*, 305, and of *Dias vs. Chickering*, 64 *Md.*, 348, any such application to the case at bar, as is contended for by the appellees and as is set out in the opinion of the Court below. On the contrary, the legal deduction from the decision in both cases is against, rather than in support of, the appellees' contention. In both cases the rights and powers of agents and factors entrusted with personal property for specific purposes are the questions involved and decided.

If, however, to sustain the appellant's title, proof of notice to third parties, and to the mortgagees in particular, was necessary, equally untenable is the claim of the mortgagees that they are innocent purchasers without notice. Notice to Winebrenner, the first mortgagee, of the appellant's claim, is proven by the testimony of Hoover, and by the admission of Winebrenner himself, and this notice to him was notice to his co-mortgagees. *Meux vs. Belt*, 1 *Hare*, 73; 1 *Jones on Mortgages*, sec. 579; *Baughman, Ex'r vs. Duphorn*, 9 *Gill*, 314.

In addition to actual notice, the facts and circumstances of the dealings between Hoover and the mortgagees affected the latter with notice of appellant's claim; and if,

the character and extent of his claim was not fully disclosed to them, the facts as disclosed were sufficient to put them upon inquiry. "Circumstances sufficient to put a party upon inquiry are equivalent to notice in equity." *Ringgold vs. Ryan,* 3 *Md. Ch. Dec.,* 488; *Stockett vs. Taylor,* 3 *Md. Ch. Dec.,* 537; *Magruder vs. Peter,* 11 *G. & J.,* 217; *Smoot vs. Rea,* 19 *Md.,* 412.

*Clayton O. Keedy, John C. Motter,* and *William P. Maulsby, Jr.,* for the appellees.

The main question here is one of law, and is "whether a vendee in possession of property under a conditional contract, such as the one in evidence, can transfer title to a *bona fide* purchaser for value and without notice of such contract." However this question may have been determined in other jurisdictions, it is no longer an open one in Maryland. Here it has been answered in the affirmative. *Hall vs. Hinks, et al.,* 21 *Md.,* 418, *et seq.; Levi vs. Booth,* 58 *Md.,* 305; *Dias vs. Chickering,* 64 *Md.,* 348; *Butler .vs. Gannon & Duvall,* 53 *Md.,* 341. See also 1 *Benj. on Sales, sec.* 452, *et seq.*

The contract in this case was in reality a sale with the right of rescission on the part of Lincoln, in case certain conditions were not complied with. While this contract is good as between the parties, yet as to the world at large it was in effect an effort to retain a secret lien. It was constructively fraudulent to begin with; to innocent third parties it has become actually fraudulent. In these cases Courts will penetrate the disguise and judge of the transaction by its true character. *Heryford vs. Davis,* 102 *U. S.,* 235; 1 *Benj. on Sales, sec.* 453, (*Corbin's Ed.*); *Hervey vs. R. I. Locomotive Works,* 93 *U. S.* 665.

BRYAN, J., delivered the opinion of the Court.

The question in this case involves the validity of a title to goods and chattels derived from the vendee in a con-

ditional sale.   In *Hall vs. Hinks,* 21 *Md.,* 406, it was decided
that "a *bona fide* purchaser, without notice of the condition
upon which his vendor has acquired the possession, will be
protected against the claim of the original vendor, in the
same manner where the sale and delivery are conditional,
as where the possession has been obtained by fraud."
Twenty-three years have passed since this decision was
made, and in the course of that time it has been repeatedly
approved by this Court.   It is of great importance that the
administration of justice should be conducted according to
fixed and certain rules.   Vacillation and uncertainty in the
judgments of the Courts produce a feeling of insecurity as
to rights and property, and surely tend to encourage dis-
order, discord and confusion in social and domestic life.
The law on this subject has been otherwise settled in many
of the States of the Union.   In *Harkness vs. Russell,* 118
*U. S.,* 663, a very learned and elaborate examination of
the question was made by the Supreme Court of the United
States, and the positions taken in the opinion were main-
tained with great force and clearness.   The laws of the
several States have probably had their origin in the
necessities and interests of the people concerned, and
doubtless have been adapted to their condition and circum-
stances under the guidance of a wise public policy.   We
read with pleasure and profit the able disquisitions de-
livered by other Courts, but we are not unmindful that it
is our duty to declare our own law as it belongs to our own
people.   Having found this question settled by all the
authority which can be bestowed by repeated decision and
long acquiescence, we are unwilling to disturb it.

The contract of sale in this case contained an express
stipulation that the title to the goods should not vest in
the vendee until the price should be paid in full ; and in-
stalments were to be paid monthly.   They were sold in
the City of Baltimore by Lincoln, the appellant, to Hoover,
and were carried by him to Frederick, and used in a hotel

Lincoln *vs.* Quynn, *et al.*

which he was keeping in that place. More than a year afterwards the purchaser mortgaged these goods to Quynn, Addison and Winebrenner to secure the payment of two notes of even date with the mortgage, payable by the purchaser to a bank. On one of these notes all of these mortgagees were securities, and on the other Winebrenner alone was security. A few days after this mortgage, a second one was made by the purchaser to Ritter and other persons to secure a promissory note of same date, payable by him to them. All the above mortgagees are appellees in this case. A short time after the date of these mortgages all of the property of Hoover was placed in the hands of receivers by an order of the Circuit Court for Frederick County sitting in equity. A large portion of the purchase money remaining unpaid, Lincoln filed a petition in which he asserted title to these goods, and prayed that they should be delivered to him by the receivers; or, if the Court should think that he was entitled only to the balance of the purchase money which was unpaid then that the receivers should be directed to pay him said balance, or if they had no funds applicable to that payment, that the goods should be sold and the balance paid out of the proceeds of sale. It is shown by the evidence that none of the mortgagees, except Winebrenner, had any notice of the terms of the conditional sale, or of any claim on the part of Lincoln to the goods. With respect to Winebrenner, he had information of matters which fairly put him on inquiry, and according to the established rule, he must be charged with notice of every fact which that inquiry would have ascertained. *Higgins vs. Lodge, Wilkins & Co. ante,* page 229. The result is that Winebrenner's title is not good, but that of the other mortgagees must be sustained. The prayer of the petition was for certain specific relief which was properly refused. It asserted a claim to the whole property, or alternatively to the amount of the purchase money remaining unpaid, and it was directed

Lincoln *vs.* Quynn, *et al.*

against all of the mortgagees.   It could not be granted in that form, and there was no prayer for general relief.   The petitioner, however, is not without remedy against Wine-brenner.   He may still file a petition against him and he will be entitled to receive such portion of the proceeds of the sale of the goods as may be applicable to the debt on which he is the only surety, subject to an abatement which will be presently mentioned.   It would not be just to de-prive these persons who are co-sureties with him of their rights under the mortgage.   They are in no sense partners with him, and ought not to be affected by notice which is entirely personal to him.   It is true that the payment of the debt will enure to Winebrenner's benefit.   But it is their right to have the proceeds of the goods applied to its payment, whatever may be the incidental advantage to others.

It was stipulated in the contract of sale that if Hoover made default in any of the credit payments, Lincoln might reclaim and take possession of the goods, and that all pay-ments which had been made up to that time should be forfeited.   A Court of equity will not lend its aid to enforce a forfeiture of this kind.   Against persons liable to his claim on the property he could in equity recover an interest in the goods equal to the amount of the unpaid purchase money.   That portion of this interest which would be applicable to the payment of the note secured by Wine-brenner alone is still the property of Lincoln, and he must be paid out of the proceeds of sale of the goods, a sum duly representing this portion.

The order of the Circuit Court will be affirmed, but leave will be given to the appellant to file a new petition stating his claim according to his rights as above declared.

*Order affirmed, and*
*cause remanded.*

(Decided 6th January, 1888.)