In re SOUTHERN TEXTILE CO.

(Circuit Court of Appeals, Second Circuit. December 7, 1909.)

No. 57.

BANKRUPTCY (§ 184*)—CHATTEL MORTGAGES (§ 5*)—LIENS—REGISTRATION.

Revisal N. C. 1905, § 982, declares that no trust or mortgage of personal property shall be valid as against creditors, or purchasers for value from the mortgagor, but from date of registration; and section 983 declares that all conditional sales shall be registered and shall have the same effect as chattel mortgages. The bankrupt, having several textile mills, in order to provide working capital agreed that claimants, who were factors, should advance on its goods, in process of manufacture, in transit, in the hands of finishers, and in the possession of customers until paid for, and that the goods should be subject to advances to be made generally by claimants against all merchandise in and produced at enumerated mills. *Held* in effect a chattel mortgage, and not an equitable lien, and that its character was not changed as to goods in process of manufacture because claimants in fact advanced more than the 80 per

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cent. of the value as agreed: and hence such contract, not being recorded as required, was not a valid lien against the creditors of the bankrupt, as provided by Bankr. Act July 1, 1898, c. 541, § 67a, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 276; Dec. Dig. § 184;* Chattel Mortgages, Cent. Dig. § 4; Dec. Dig. § 5.*]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Southern Textile Company, bankrupt. From an order disallowing the claim of Peter H. Corr and T. Ashby Blythe for a preference against or lien on certain personal property belonging to the bankrupt, they appeal. Affirmed.

George Gordon Battle and J. De F. Junkin, for appellants.

Shepard, Smith & Harkness (Wm. Mason Smith, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The Southern Textile Company was a New Jersey corporation which owned a number of mills, including one at Burlington, N. C., called the "Windsor Mill." It was put into involuntary bankruptcy in the Southern district of New York in the summer of 1904. In some way not explained the trustee came into possession of this Windsor Mill. There was found therein manufactured goods and goods in process. The manufactured goods were largely in cases, marked with the initials "B. & C." and with the names of various consumers. These consumers had been induced to purchase by a commission company controlled by appellants Blythe and Corr. The initials referred to them. A small quantity of the manufactured goods was not boxed, but was in piles on the floor of the mill, marked with tags "B. & C." The manufactured goods represented about .95 per cent. of the value of all the personal property on the premises. By agreement of all parties the trustee sold the property, and the claim now is to the fund resulting from such sale.

The facts upon which claimants rely are as follows: The Southern Textile Company, not having the means necessary to carry on the business, made an agreement with Blythe & Corr, who were engaged in selling the products of the mill, for advances. This agreement, dated October 29, 1903, recites that the company is without working capital sufficient to provide it with necessary raw material, and pay wages and other expenses incident to preparing the products of its mills for market, and is desirous of obtaining the same; that it has applied to Blythe & Corr as factors to advance moneys to it upon its goods in process, manufactured, in transit, in the hands of the finishers, and in the possession of its customers until paid for, subject to such advances, the same to be made to company by Blythe & Corr generally against all merchandise in and produced by the mills of the company at the Windsor Mills, Burlington, N. C., and at enumerated mills in three other states. The agreement on the part of Blythe & Corr is "as factors to make advances to the party of the first part

against its goods and merchandise generally in its said mills in process and manufactured or at its finishers, as required by the company from time to time, to an amount not exceeding 80 per cent. of the market value of the said goods and merchandise at the time of such advances." In consideration therefor the company agreed that "all of the goods in and from its various mills in process, manufactured, in the finishers, in transit, or delivered to purchasers, until actually paid for by the purchaser thereof, shall be subject to a factor's lien in favor of the parties of the second part to the extent of all advances due them from time to time made as aforesaid; that when such goods are shipped from its mills, either to a finisher or to a purchaser, the same shall be shipped in the names of the parties of the second part, and all other proceedings be taken to preserve the lien of the party of the second part thereon as factors as are customary and usual." This agreement was carried out by both parties for some months after its date. Claimants advanced a large amount of money, which was used by the company to purchase raw material and pay wages of employés. The goods thus manufactured were sold to customers whom Blythe & Corr procured, and until bankruptcy the proceeds collected therefor were paid to Blythe & Corr.

The bankruptcy act provides:

"Sec. 67a. Liens. Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt, shall not be liens against his estate. * * * (d) Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act." Act July 1, 1898, c. 541, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449).

This agreement of October 29, 1903, was never recorded, and the question presented here is whether, by reason of such want of record, the advances made under it would not have been valid liens as against the claims of the creditors of the bankrupt. Claimants concede that, if the instrument were a deed of trust or chattel mortgage, recording would be essential. The property upon which it is sought to impose a lien was located in North Carolina, and the statutes of that state provide (Revisal 1905, §§ 982, 983):

"982. No deed of trust or mortgage for real or personal estate shall be valid at law to pass any property as against creditors or purchasers for a valuable consideration from the donor, bargainor or mortgagor, but from the registration of such deed of trust or mortgage in the county where the land lieth, or in case of personal estate where the donor, bargainor or mortgagor resides; or in case the donor, bargainor or mortgagor shall reside out of the state, then in the county where the said personal estate, or some part of the same, is situated, or in case of choses in action, where the donee, bargainee or mortgagee resides.

"983. Conditional sales of personal property. All conditional sales of personal property in which the title is retained by the bargainor, shall be reduced to writing and registered in the same manner, for the same fees and with the same legal effect as is provided for chattel mortgages, in the county where the purchaser resides, or, in case the purchaser shall reside out of the state, then in the county where the said personal estate or some part thereof is situated; or in case of choses in action, where the donee, bargainee or mortgagee resides."

The claimants contend that the agreement is neither a deed of trust nor a chattel mortgage, but simply written evidence of an agreement between them and the company giving them an "equitable lien" upon the goods produced from their advances until the same were repaid. And they refer to the authorities which hold that, where the agreement is of such a character that the law does not require it to be recorded, want of record does not make it invalid under the bankrupt act. Goodnough M. & S. Co. v. Galloway (D. C.) 156 Fed. 504. In order to determine whether it is of such character, reference should be had to the law of North Carolina. If such a contract would there be held a chattel mortgage, to be recorded as such, it is not material that in other states it would not be so considered. The authority cited on respondent's brief seems determinative of this question. Brown v. Dail, 117 N. C. 41, 23 S. E. 45. In that case Heath and others entered into contract with Brown which, after setting forth that the former, who were engaged in the business of cutting and sawing timber, had not the means necessary to carry on the business and had applied to Brown for financial aid, and that he had agreed to make the advances if he should be fully secured, provided as follows:

"It is agreed by all the parties to this agreement that all the logs cut, all the lumber sawed, and every product of this business shall stand as security for all and any advancements made under this agreement; and when the lumber is sawed any sums received for the sale of the same at the mill shall be paid over to the party of the first part, and any shipment made of said lumber the bill of lading shall be made out in W. E. Brown's name and the proceeds of the same shall come first to him. That from the moneys received by W. E. Brown from the sale of lumber shall be applied to the payment of any and all indebtedness to him due and owing by the parties of the second part * * * for advancements made under this contract and agreement, and the balance, if any, shall be paid over to the said parties of the second part * * * as interest may appear."

Of this contract the court said:

"We think the agreement must be construed according to the manifest intent of the parties as a chattel mortgage. No particular form is essential, and the instrument has all the constituents necessary to create a chattel mortgage. The intention of the parties that the property to be thereafter acquired should be held in trust for the benefit of the plaintiff, and that the proceeds of the sale of it should be paid over to him, is plainly expressed, and the instrument must therefore be construed as a chattel mortgage, subject to lien laws and other statutes subject (sic) to such contracts."

We are unable to differentiate the contract in this case at bar from the one thus construed in Brown v. Dail, and must hold it to be a chattel mortgage, which under the statutes of North Carolina would be valid against creditors only if it were recorded. Such a result is wholesome. The fewer secret trusts or liens there are the better. It may fairly be presumed that, if they had been notified by the record of this document that the bankrupt had practically transferred everything to Blythe & Corr, the present creditors of the Textile Company would not have extended credit to it.

It is contended that these goods, in process or manufactured, were really the property of Blythe & Corr. The contract certainly does not so provide, and the circumstance that subsequent to January 1, 1904,

they advanced more than 80 per cent. does not operate to change it. The bankrupt bought the goods and held title to them until sale, reserving merely a lien thereon to Blythe & Corr for their advances.

The order appealed from is affirmed.