MISHAWAKA WOOLEN MFG. CO. v. WESTVEER et al.

(Circuit Court of Appeals, Sixth Circuit.   November 7, 1911.)

No. 2,129.

1. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—CONDITIONAL OR ABSOLUTE SALE—LAW GOVERNING.

Whether a contract under which goods were delivered to a bankrupt was one of conditional or absolute sale is a question to be determined by the local law as established by decisions of the highest court of the state.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

2. SALES (§ 454*)—CONSTRUCTION OF CONTRACT—CONDITIONAL OR ABSOLUTE SALE.

A contract under which merchandise was delivered to a retail dealer provided that title should remain in the vendor until full payment was made, and that, on default or insolvency of the purchaser, the vendor might retake possession of such of the goods as should "remain in the hands of the purchaser unsold," but that such retaking should not affect the purchaser's liability to pay for the goods not so retaken.   There was no provision that the proceeds of goods sold should be accounted for or should belong to the vendor.   *Held* that, under the law of Michigan, the sale was not conditional, but absolute with a retention of title to the unsold goods as security, which was ineffective as against a subsequent mortgagee for value and in good faith without notice.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1324; Dec. Dig. § 454.*

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

Appeal from the District Court of the United States for the Western District of Michigan.

In the matter of Kleyn, bankrupt.   On petition of the Mishawaka Woolen Manufacturing Company to reclaim property, contested by Adrian J. Westveer and Josephine K. Westveer, mortgagees.   Order denying petition, and petitioner appeals.   Affirmed.

C. E. Buell (George S. Boltwood and Lucius Boltwood, on the brief), for appellant.

M. A. Sooy, for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

WARRINGTON, Circuit Judge.   This is an appeal from an order of the court below reversing an order of a referee in bankruptcy.   The order so reversed directed the trustee in bankruptcy to return to appellant certain goods, called "footwear," which, before the proceeding in bankruptcy was begun, appellant had delivered to the bankrupt, one Kleyn.   When Kleyn obtained the goods, he was engaged in the retail shoe business in the city of Holland, Mich.   The present proceeding was commenced by petition of appellant for the order mentioned, and was based upon a claim that the goods were sold to Kleyn upon a contract reserving title in the vendor until payment was made. The trustee in bankruptcy filed an answer, but under stipulation the proceeding has been and is contested by appellees.   After delivery of

the goods to Kleyn, to wit, on November 4, 1909, Kleyn gave a chattel mortgage to the Westveers, appellees, covering his entire stock and fixtures, including the goods in controversy, "to secure (as stipulated) a bona fide loan of $2,000." On the 13th of the same month a petition in involuntary bankruptcy was filed against Kleyn, and on the following December 17th he was adjudicated a bankrupt, and a trustee was appointed on the same day. The goods were thereafter delivered to appellant on its giving bond to secure payment of their cost price, $294.80, to the trustee or to the Westveers "as their rights may be determined by the court."

The contract in question contains these provisions:

"The title and property in all the goods herein mentioned shall remain in the vendor until fully paid for in cash, and, if payments for the same shall not be properly made when due, or if, at any time before the same shall be fully paid for, the purchaser shall become insolvent, or shall, in the opinion of the vendor, be in danger of insolvency, or the vendor, in its judgment, shall. for any reason whatever. deem itself in danger of losing the price of the said goods, then the vendor may, at its option, reclaim and take possession of so much of the said goods as shall then remain in the hands of the purchaser unsold; provided, however, that this provision shall not in any wise affect the liability of the purchaser for the payment at the prices agreed upon for such goods as are not recovered by the vendor in the manner aforesaid.   *   *   *   Punched goods are sold subject to our having them in stock.   *   *   *   These provisions shall be understood to apply also to all orders hereafter received by the vendor from the purchaser, whether expressed in such orders or not."

[1] The question is whether the transaction involving the delivery of the goods under this contract was a conditional sale or an absolute sale. If it was the former, the order made by the court below will have to be reversed. If the latter, it will have to be affirmed.

Counsel concur in the proposition that the question is local, and must be determined according to the rule of decision prevailing in the court of last resort of Michigan. Thompson v. Fairbanks, 196 U. S. 516, 522, 25 Sup. Ct. 306, 49 L. Ed. 577; York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 353, 26 Sup. Ct. 481, 50 L. Ed. 782; Bryant v. Swofford, 214 U. S. 279, 290, 291, 29 Sup. Ct. 614, 53 L. Ed. 997; Dodge v. Norlin (C. C. A. 8th Cir.) 133 Fed. 363, 370, 66 C. C. A. 425. And for the purposes of this case we shall accept the proposition and the decisions cited in its support as applicable. See, also, In re Southern Textile Co. (C. C. A. 2d Cir.) 174 Fed. 523, 526, 98 C. C. A. 305; In re Baker (C. C. A. 6th Cir.) 182 Fed. 392, 394, 104 C. C. A. 602.

[2] Although provision is made by Michigan statute for filing chattel mortgages (3 Comp. Laws 1897, § 9523), conditional sales are not in terms mentioned in the statute; and the contract in issue was never filed. The courts of Michigan have gone as far as the courts of any state have in upholding conditional sales. As was said in Brewery Co. v. Merritt, 82 Mich. 198, 201, 46 N. W. 379, 380 (9 L. R. A. 270):

"This court has gone very far in sustaining conditional sales, and has never declared them void nor different from what the parties have intended by their agreement."

It is to be observed, however, that the court requires the use of clear and explicit language to display the intent, if there be intent, to withhold title in chattels delivered into possession of others for use or resale. Thus in Edwards v. Symons, 65 Mich. 348, 355, 32 N. W. 796, 800, when speaking of a contract that did not in express terms cover after-acquired goods and was not extended by implication for that reason, it was said:

"The rule of law that permits a vendor to retain the title to goods bartered by him, and placed apparently in the exclusive possession, control, and ownership of the vendee, until the whole purchase price is paid, without notice to parties dealing with such vendee, is, at best, a harsh one, and should not be enforced except in cases where the agreement to so hold the title is positive and unambiguous."

It is further to be noted that, in ascertaining the intent of this class of agreements, the Supreme Court of Michigan does not regard the fact alone that the title to the goods is in terms to remain in the vendor until payment is made, as necessarily importing a conditional sale. The court looks not merely to the whole instrument but also to the acts and circumstances attending its execution and performance. For example, in Choate v. Stevens, 116 Mich. 28, 29, 74 N. W. 289, 290, 43 L. R. A. 277, it appears that an agreement (relating to a soda-draught apparatus) and also certain promissory notes containing reservations were under consideration. The notes were given after delivery of the property and in accordance with the main agreement. The reservations contained in the notes provided among other things "that the title to the above-mentioned property does not pass to the undersigned, and that, until all said notes are paid, the title to the aforesaid shall remain" in the seller "who shall have the right, in case of nonpayment at maturity of either of said notes * *. * to enter and retain immediate possession of said property." The court said of one of these instruments (116 Mich. 30, 74 N. W. 290, 43 L. R. A. 277):

"If it can be said that this writing shows a sale of the soda fountain, as contradistinguished from a contract to sell, the provisions as to title amount to no more than a chattel mortgage."

Thereupon language of the late Justice Harlan was approved as used in Chicago Railway Equipment Co. v. Merchants' Bank, 136 U. S. 280, 10 Sup. Ct. 1002, 34 L. Ed. 349:

"The fact that, by agreement, the title is to remain in the vendor of personal property until the notes for the price are paid, does not necessarily import that the transaction was a conditional sale."

And the learned judge announcing the opinion in Choate v. Stevens had no hesitation in saying in respect of all the instruments that the transaction "was a sale with a reservation of title by way of security."

Again, in Van Den Bosch v. Bouwman, 138 Mich. 624, 101 N. W. 832, 110 Am. St. Rep. 336, a promissory note had been given with a condition of sale and purchase of a horse, harness and buggy, which provided:

" * * * Title, ownership, or possession does not pass from the said payee until this note and interest is paid in full and that the said payee has full

power to declare this note due and take possession of said above-described property at any time he may deem himself insecure, * * * and upon taking possession * * * said payee may sell the same * * * or retain the same without sale, and in such case the amounts paid on this note shall be deemed to be compensation only for the use, wear, and tear of said property."

After certain payments had been made, plaintiff took possession of the property, and sold it for less than the amount remaining due. It was contended that the transaction was a conditional sale, and that on retaking the property the consideration for defendant's engagement to pay ceased. It was held that the express promise to pay was not satisfied or abrogated by the authority given to sell and then collect the difference, and so recovery was allowed. Plainly, in addition to reserving title and ownership, possession was in terms both retained and given; but, despite this, the intent was readily perceivable and given effect.

What, then, is the true meaning of the agreement under consideration? The goods were to be delivered to a retail shoe dealer and mingled with his goods. Although the title to all goods so delivered was in terms to remain in the vendor until paid for in cash, still the right to reclaim goods, for reasons named, was limited to those remaining "in the hands of the purchaser unsold." What is to be said of the goods representing the difference in quantity between those delivered and those remaining unsold? It seems clear to us that they were intended for resale in the hands of the vendee, quite as certainly as were any other goods in his store. The right of resale must, therefore, be regarded as having been contemplated by the parties and be extended to all the goods delivered; for there is nothing in the contract limiting resales made in the ordinary course of business, respecting any of the goods. The accident that goods might at any time be found to have been unsold, as actually occurred in the present instance, cannot affect the existence of the right of resale as it was originally designed and given.

More than this, there is nothing in the agreement which purports to reserve or to give title to the vendor in any of the proceeds of sales, whether received in the form of notes, accounts or cash. On the contrary, a proviso is attached to the right to reclaim and take possession of goods unsold, which, in terms, preserves "the liability of the purchaser for the payment at the price agreed upon for such goods as are not recovered by the vendor." Liability of the vendee seems thus to have been desired rather than reservation of title in any sales proceeds, no matter in what form derived. It ought to follow that performance of the contract necessarily operated to transfer an absolute title in the goods to the vendee. There is nothing to indicate, certainly not clearly to indicate, that he took the goods upon consignment, or as factor, or as an agent of any kind, with power to transmit title from the vendor to subpurchasers. The very use of such terms as "vendor" and "purchaser" also "punched goods are sold subject to our having them in stock" as used in the agreement would seem expressly to negative all idea of agency. Chicago Railway Equipment Co. v. Merchants' Bank, supra (136 U. S. 268, 282, near bottom, 10 Sup. Ct. 999, 34 L. Ed. 349). This conclusion is strengthened by

a further provision of the contract forbidding the "purchaser" to sell any of the goods "to any retail or wholesale dealer except with the previous consent of the company," and imposing "as liquidated damages" for violation of such provision 10 per cent. of the invoice price "without relief from valuation laws and with attorney's fees." It is obvious that, if such restriction were lawful (Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502), the very means adopted to secure its observance involve an admission that the title to the goods would pass with their delivery. It must be borne in mind that we are to consider this contract as a whole—weighing all the terms and provisions expressed, and also the reasonable and natural results of its performance—in order to gain a definite conception of the intention of the parties.

These considerations seem to us to bring the present case within the principles of Choate v. Stevens and Van Den Bosch v. Bouwman, and to distinguish it from the cases relied on by appellant. The case of Brewery Co. v. Merritt, 82 Mich. 198, 46 N. W. 379, 9 L. R. A. 270, seems to be the one upon which appellant places the greatest reliance. Comparison of the agreement there involved with the present one will show that the two instruments differ in some of the characteristics of sale and purchase. The instant agreement contains as before pointed out distinct tokens of sale, while the provisions of the other for shipment and for reservation of title until the beer was sold satisfied the court in Brewing Co. v. Merritt that the transaction was meant to be a consignment rather than a sale, the court at last treating that agreement the same as if it had in terms provided (82 Mich. 201, 46 N. W. 380, 9 L. R. A. 270) : "I will ship you all goods you may order, but you must sell so as to net me so much a bushel or barrel or yard." That case was treated by the trial judge, who sat in the present case, as depending "essentially upon the theory that an agency was created." He further called attention to the fact that "it is so considered in the reporter's note to Pettyplace v. Manufacturing Co., 103 Michigan at page 171."

We are not unmindful of the force of the claim that the construction given to the agreement in the brewing company case ought to be applied to the agreement now in dispute. However, we are unable to perceive how that insistence can be reconciled with the conclusion reached by the court in Choate v. Stevens, and especially with the approval there given to the reasoning of the late Justice Harlan in Chicago Railway Equipment Co. v. Merchants' Bank. Of the two alternatives, we are disposed to believe that the rule of decision deducible from all the pertinent cases of Michigan requires us to place upon the present agreement the construction we have given to it, rather than the one reached in respect of the agreement in Brewery Co. v. Merritt.

Another case relied on by appellant is Pratt v. Burhans, 84 Mich. 487, 47 N. W. 1064, 22 Am. St. Rep. 703. By the contract, as there testified to, the owners retained title to the cigars "until paid for or sold, and, when sold, the accounts belong to them." We think the case is distinguishable from the fact that reservation of title was there extended to the accounts. The difference between reserving and not

reserving title to proceeds of sale is helpful in ascertaining intent touching retention or passage of title at the time of delivery. We agree to the principle stated by Judge Denison, who presided at the trial below, when he said:

" * * * Where the proceeds of sale do not belong to the principal, but do belong to the intermediary, the relation of agency does not exist, and the sale is the sale of the intermediary and not the act of the principal, and it must follow that in such cases a stated reservation of title is not effective, according to its form, but can be effective only as a security, and must be governed by the rules affecting any pledge or conveyance by way of security."

This, as it seems to us, is in substantial harmony with the Michigan decisions; and also with a number of decisions cited, as well as the very clear decision itself, in Pontiac Buggy Co. v. Skinner (D. C.) 158 Fed. 858, 862, 863. And as is said in Herryford v. Davis, 102 U. S. 235, 245, 26 L. Ed. 160, approved in Chicago Railway Equipment Co. v. Merchants' Bank, before cited (136 U. S. at 281, 10 Sup. Ct. 999, 34 L. Ed. 349):

"It is quite unmeaning for parties to a contract to say it shall not amount to a sale, when it contains every element of a sale and transmission of ownership."

Reliance is also placed on a decision of Judge Knappen in the unreported case of In re Greenfield; but the contract there passed upon was, as the learned trial judge stated in the court below, "the typical contract of shipment on consignment only or of factorage." It is unnecessary to comment upon all the decisions cited by learned counsel for appellant. It is sufficient to add that we do not know of anything in the Michigan decisions which at bottom is inconsistent with the construction we have placed upon the contract in issue, and we have pointed out decisions of the Supreme Court of the state which we think distinctly sustain our conclusion.

It is argued that decisions passing upon contracts in terms reserving title in articles delivered for personal use of the original taker, like machinery, pianos, and sewing machines, are distinguishable from decisions under similar contracts relating to articles delivered for purposes of resale. We do not discover that the Supreme Court of Michigan has made such a distinction, and it is difficult to see any sufficient reason for its existence. Both classes of articles are delivered into the possession and control of the first taker, without notice to any other person of any title or interest retained in them. They are alike chattels, which, in such instances, connote ownership and the right of sale in their possessor. Any one having dealings in respect to them with a person in possession and control, without notice and for a present valuable consideration, ought to secure the same rights with regard to the one class as the other. It is settled in Michigan in substance and effect, that, where title to goods has actually passed to a mortgagor, his mortgagee in good faith is to be treated the same as a purchaser in good faith would be. Hudson v. McKale, 107 Mich. 22, 24, 64 N. W. 727, 61 Am. St. Rep. 310; Heenan v. Forest City Paint & Varnish Co., 138 Mich. 548, 553, 101 N. W. 806; Zucker v. Karpeles, 88 Mich. 413, 430, 50 N. W. 373; Hoffman v. Lake Shore, etc., R. Co., 125 Mich. 201, 205, 84 N. W. 55.

We hold for reasons before stated that title to the goods in dispute passed to Kleyn; that the instrument under which an attempt was made to retain title was at most simply an ineffective reservation of security; and that the Westveers made their loan and received their mortgage on the goods without knowledge either actual or constructive of any claim of right or interest therein of appellant.

The contention that the transaction between Kleyn and the Westveers was not had in the ordinary course of sales or business and consequently was void under language found in Pratt v. Burhans is not tenable. The failure of appellant effectively to reserve title as security for the purchase price necessarily resulted, as before pointed out, in an absolute sale to the vendee; and this, of course, involved that right of sale or other disposition, which ordinarily inheres as an incident of ownership. Moreover, the only restriction attempted to be placed on the right of sale was applied exclusively to retail and wholesale dealers in such goods, and there is nothing to show that the Westveers were either.

The order of the court below must therefore be affirmed, with costs.